UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOROTHY M. LADAY, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-06-1363 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner, Social Security | § | |
| Administration, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this appeal from a denial of Social Security disability benefits is Plaintiff's Motion for Summary Judgment. After considering the parties' filings and the applicable law, the Court finds that the motion, Docket No. 7, should be **DENIED.**

### I.   BACKGROUND

Plaintiff Dorothy Laday, a fifty-five year-old woman, applied for disability benefits under Title II of the Social Security Act in February 2002, claiming that she had been disabled by eye problems and diabetes since November 2000. (R. 103, 108.) Plaintiff's application was denied initially and on reconsideration, and a hearing was held on March 3, 2004 before an administrative law judge ("ALJ"). (R. 675.) The following retained experts testified at the hearing: Susan Meek, an ophthalmologist, Woodrow Janese, a neurologist, and Lorie McQuade, a vocational expert. In an opinion issued in July 2004, the ALJ entered a finding of non-disability. (R. 79.)

Plaintiff appealed, and the Appeals Council granted a new hearing, specifically instructing the ALJ more closely to assess Plaintiff's mental impairments and their effect on her residual functional capacity. (R. 94-95.) A *de novo* hearing took place on May 31, 2005. (R.

1

635.)  Plaintiff testified at the hearing, as did Meek, Steven Goldstein (a neurologist), and vocational expert Charles Poor.  Plaintiff stated that her primary physical problems were pain in her legs and difficulty with her vision.  (R. 639-40.)  She rated her leg pain on an average day as a ten, on a scale from one to ten, and testified that the pain prevented her from returning to work as motel maid.  (R. 640, 644-45.)  Plaintiff also stated that she could not work as a school cafeteria worker or home health aide, due to her vision problems.  (R. 644, 646.)

Medical expert Steven Goldstein noted Plaintiff's history of diabetes and opined that at certain times (when Plaintiff's hemoglobin A1C levels were between 12 and 15), her functional capacity would be less than sedentary.  (R. 648.)  Under questioning from the ALJ, Dr. Goldstein testified that if Plaintiff were able better to control her diabetes (*e.g.*, through reasonable compliance with her prescribed dietary regimen and perhaps by using insulin), she could perform at a light level of activity.  (R. 649.)  Dr. Goldstein concluded that Plaintiff's diabetic condition did not meet or equal a listing in the Social Security regulations.  *Id.*  Dr. Meek, testifying about Plaintiff's diabetes in relation to her eyes, also opined that Plaintiff did not meet or equal any listings, and described the diabetes as "not severe."  (R. 651.)  According to Meek, the most recent records indicated that Plaintiff had a visual acuity of 20/40 in her left eye, and 20/200 in her right.  *Id.*

With regard to Plaintiff's vocational characteristics, VE Charles Poor testified about Plaintiff's past relevant work as a nursing aide, motel maid, and home health aide.  Poor stated that with a functional capacity to perform light work, Plaintiff could resume work as a motel maid, but that a less than sedentary capacity would render her unable to perform any of her past relevant work.  (R. 653-54.)

In a decision issued on July 20, 2005, the ALJ denied Plaintiff's claim for disability benefits. (R. 13-24.) The ALJ found that Plaintiff has the following severe impairments: diabetes mellitus, gastroesophageal reflux disease, and non-proliferative diabetic retinopathy. However, he determined that these conditions did not meet or equal in severity the requirements of any listed impairments. The ALJ found that Plaintiff's own allegations about her limitations were not entirely credible, and that she retained the residual functional capacity to perform light work, although her capacity was somewhat compromised by her lowered visual acuity. In sum, the ALJ found that Plaintiff was not precluded from performing her past relevant work as a motel maid. (R. 23.)

The Appeals Council denied review of the ALJ's decision in March 2006. (R. 4.) Plaintiff filed the instant case in April 2006, maintaining that the ALJ erred in denying her claim for benefits.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899,

902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id*.

### B. Standard of Review

Judicial review of an ALJ's denial of disability benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)).

### C. Legal Standard

A disability claimant bears the initial burden of proving that she is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). A person claiming a disability must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, "[a] claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured." *Ivy v. Sullivan*, 898 F.2d

1045, 1048 (5th Cir. 1990). In the instant case, Plaintiff bears the burden of demonstrating that a qualifying medical impairment began on or before June 30, 2003.

> The Court evaluates a disability claim via a five-step process, as follows:
>
> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa*, 895 F.2d at 1022). "A finding that a claimant is not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). The claimant bears the burden of proof through the first four steps, and the burden shifts to the Commissioner at step five. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

  **D. Laday's Claim**

With respect to Plaintiff's claim, the Court finds that substantial evidence supports the ALJ's conclusions, and that the ALJ properly applied relevant legal standards.

  **1. Medical opinions**

Plaintiff argues that the ALJ improperly discounted various medical opinions, including those of Dr. Goldstein and Plaintiff's treating physician. The Court finds, however, that the ALJ did not commit error in this respect.

As an initial matter, the Court notes that Plaintiff does not challenge the ALJ's substantive findings as to her physical disabilities. That is, she nowhere contends that the ALJ committed error in finding that her diabetes mellitus, gastroesophageal reflux disease, and non-

proliferative diabetic retinopathy do not meet or medically equal one of the listed impairments in the Social Security regulations.  (R. 23.)    Rather, Plaintiff focuses on the ALJ's step four determination of her residual functional capacity and on his analysis of her alleged mental impairments.  Therefore, the Court will not revisit herein the ALJ's step two or step three findings with regard to Plaintiff's medical conditions.

As to physician testimony and opinions, Plaintiff first asserts that the ALJ impermissibly disregarded the testimony of medical expert Dr. Goldstein, in that the ALJ concluded that Plaintiff retained the capacity to perform light work.  As discussed above, Dr. Goldstein opined at the hearing that Plaintiff's diabetes was uncontrolled, and that "during times when [Plaintiff's] hemoglobin A1C would be in the range of 12 or 15," she would not be able to perform even sedentary work.  (R. 647-48.)  Plaintiff argues that based on this testimony, the ALJ should have categorized her RFC as "less than sedentary."  However, Dr. Goldstein also noted indications in the record that Plaintiff had been noncompliant with her diabetes regimen, and under questioning from the ALJ, he opined that with better control of her diabetes, "she could be at a light level of activity."  (R. 649.)

The administrative opinion by no means disregards this testimony, but in fact restates Dr. Goldstein's conclusions almost verbatim.  (R. 20.)  Further, the opinion "accepts the testimony of Dr. Goldstein and finds it consistent with the objective medical evidence."  *Id.*  While the ALJ ultimately concluded that Plaintiff could perform light work, this determination does not exist in tension with the views offered by Dr. Goldstein.  Rather, the ALJ appears to have considered other evidence and found, as Dr. Goldstein testified, that Plaintiff's diabetes likely *could* be

6

better controlled, thus enabling Plaintiff to function at a light level of activity.[1] Whether the ALJ committed error in weighing other evidence will be addressed in more detail below. With respect to the ALJ's treatment of Dr. Goldstein's testimony, however, the Court finds no error.

More seriously, Plaintiff contends that the ALJ failed to give proper weight to the opinions of Plaintiff's treating physician. If supported by evidence in the record, a treating physician's medical opinion generally receives controlling weight, or at least due weight. *See* 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."); *see also Newton*, 209 F.3d at 456. The Fifth Circuit has held that an ALJ may decrease the weight afforded to the opinions of treating physicians only if there is good cause to do so. *Leggett v. Chater*, 67 F.3d 558, 565-66 (5th Cir. 1995). An administrative judge may find good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. Even then, however, the ALJ should normally apply six factors articulated in the regulations: 1) length of the treatment relationship and the frequency of the examination; 2) nature and extent of the treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors. *Leggett*, 67 F.3d at 565-66; *Newton*, 209 F.3d at 456 ("an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).") (emphasis in the original).

---

[1] For example, and as will be discussed later, the administrative opinion cites to pages in the record that indicate periodic non-compliance by Plaintiff with her diabetes regimen, and states that "[w]hen an individual does not follow prescribed treatment without a good reason a finding of not disabled will be made." (R. 21.)

The medical opinion that Plaintiff claims was improperly discounted appears in the administrative record at page 427. It is a form, filled out by an individual from the Baytown Health Center and addressed "To whom it may concern," dated April 16, 2003. The form provides spaces for various diagnoses to be filled in, and a simple checklist indicating whether a patient is able to work with no restrictions, able to work with some restrictions, or unable to work. The "Diagnosis" section shows that Plaintiff suffers from "diabetes mellitus uncontrolled," depression, and hydronephrosis. A check mark appears next to the statement that "Patient cannot work," and both "physical" and "mental" are circled as disabling factors. Another check mark indicates that Plaintiff's ability to work will be affected for twelve months. The form is signed, but the signature is illegible. With regard to this form, the administrative opinion states that "[c]onsideration has been given to the statement of the claimant's treating physician with the Baytown Health Center rendered on April 16, 2003." (R. 19.) The opinion accurately summarizes the form, but rejects its contents as unsupported by the record. *Id.*

The Court would be hard-pressed to find a clearer instance of good cause to discount a treating physician's opinion. First, while the ALJ appears to have assumed that the signature on the form is that of Plaintiff's "treating physician," it is in fact virtually impossible to identify the signatory, and Plaintiff herself has not named the individual who filled out the form. Second, the diagnoses and conclusions offered on the form are nothing but conclusory; they are unsupported by any reference to medical records, observation or analysis of Plaintiff's symptoms or history, or other narrative element that would at least establish the signatory's relationship with or knowledge of Plaintiff. Third, there is no other statement or even implication in the record, offered by a treating physician or anyone else, indicating that Plaintiff is unable to work. Finally, while the record at least corroborates Plaintiff's complaints relating to diabetes, eye

problems, and limb and joint pain, there is little to no evidence therein of medically determinable depression or hydronephrosis,[2] nor has Plaintiff alleged those conditions to be part of her disability. An ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton*, 209 F.3d at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).

It is true that that under *Newton*, "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Id.* at 456. While Plaintiff concedes that the ALJ discussed some of these factors narratively, particularly the supportability and consistency of the disability finding in light of the record evidence, the ALJ did not proceed through all six factors. (R. 19.) In the Court's view, however, the medical "opinion" at page 427 of the record falls far short of what *Newton* intended to protect.

In *Newton*, the Fifth Circuit found that an ALJ improperly discounted the views of Dr. Pertusi, Newton's treating physician, who had provided a thorough assessment of Newton's physical abilities and diagnoses, as well as detailed responses to interrogatories from Newton's attorneys. The ALJ wholly rejected Dr. Pertusi's opinions in favor of a non-treating, non-examining medical expert who testified at Newton's benefits hearing. In finding that the ALJ had committed error, the Fifth Circuit distinguished the facts of Newton's case from circumstances where "the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," *id.* at 458 (citing *Spellman v. Shalala*, 1 F.3d 357 (5th Cir. 1993)), or where "the ALJ weighs the treating physician's opinion on disability against the medical opinion

---

[2] To present a single example, a radiology consultation in August 2003, only four months after the date on the form, states that there is "[n]o evidence of nephrosis." (R. 454.)

of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* (citing *Prosch v. Apfel*, 201 F.3d 1010 (8th Cir. 2000)).

In the present case, the Court has no assurance that the individual who filled out the form was, in fact, Plaintiff's "treating specialist." Further, the form itself provides far less detail and texture regarding Plaintiff's impairments or her relationship with the signatory than the assessments presented by the treating physician in *Newton*. The ALJ in the instant case did not reject the opinion reflected on the form in order to defer to a non-treating, non-examining medical expert. Rather, he found that the form was unsupported by any significant evidence in the record, including the views of other examining, treating physicians. Other courts in this circuit have recognized factual bases for distinguishing cases from *Newton*. *See, e.g.*, *Meyer v. Barnhart*, 163 Fed. Appx. 347, 348 (5th Cir. 2006) (factually distinguishing *Newton* and characterizing it as a case in which "the ALJ rejected the opinion of the treating physician based on the opinion of a non-treating, non-examining physician, which is improper."); *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 509-512 (S.D. Tex. 2003) (finding no reversible error in the ALJ's failure specifically to reference the Section 404.1527(d) factors because "it does not appear that the instant case falls within *Newton*'s ambit," and discussing cases that suggest limits on the *Newton* holding). Finally, it is well recognized in the case law that "the ALJ has sole responsibility for determining a claimant's disability status." *Paul*, 29 F.3d at 211, *quoted in Newton*, 209 F.3d at 455. The Court finds that the ALJ's rejection of the unsupported, conclusory determination that Plaintiff was unable to work, in light of contradictory record evidence, did not constitute error.

Neither did the ALJ err in not requiring Plaintiff to obtain a more detailed report from her treating physician, as Plaintiff argues. While the Fifth Circuit has imposed a duty on an ALJ "to

10

develop the facts fully and fairly relating to an applicant's claim for disability benefits," *Newton*, 209 F.3d at 458 (quotation marks omitted), "[r]eversal, however, is appropriate only if the applicant shows prejudice from the ALJ's failure to request additional information." *Id.* "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* Plaintiff has made no effort to show prejudice from the ALJ's decision not to request additional information. Further, given the voluminous records that Plaintiff originally submitted, virtually none of which support the conclusory opinions reflected on the form, there is no indication that additional evidence might have altered the ALJ's decision. Therefore, the Court finds that the ALJ did not err in declining to request additional information.

### 2. Plaintiff's mental impairments

Plaintiff also argues that the ALJ made several errors in assessing her mental impairments. The Court finds no reversible error in the ALJ's determinations on this issue.

Plaintiff first challenges the ALJ's finding that her mental impairments are not severe.[3] (R. 17-18.) "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" may include, among other things, simple physical functions and capacities, the ability to understand, carry out, and remember simple instructions, the use of judgment, appropriate responses to supervision, co-workers, and typical work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). The Fifth Circuit has held in a case dealing with mental disabilities that "an impairment can be considered as not

---

[3] Plaintiff also argues that the ALJ erred in finding that her mental retardation was not medically determinable, but upon examining the opinion, the Court is unable to locate any such separate finding. The ALJ stated that "[t]he claimant does not have a 'severe' medically determinable mental impairment, however." (R. 17.) The Court will concentrate its analysis on the ALJ's determination of non-severity.

11

severe only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to *work*, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). According to the Social Security regulations, a claimant will be found to have severe mental retardation if he or she exhibits:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or
> B. A valid verbal, performance, or full scale IQ of 59 or less; or
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: 1) marked restriction of activities of daily living; or 2) marked difficulties in maintaining social functioning; or 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpart P, App. 1 (Listing 12.05) (hereinafter "Listing 12.05").

The administrative record contains two significant assessments of Plaintiff's mental abilities and their effect on her capacity to work. First, Plaintiff was evaluated in August 2001 by Mark Lehman, Ph.D., after being referred for testing by the Texas Rehabilitation Commission. (R. 174-179.) Dr. Lehman interviewed Plaintiff and performed a series of standardized tests to determine her I.Q. and her level of psychological functioning. According to Dr. Lehman, Plaintiff obtained a full-scale I.Q. score of 68, a verbal score of 68, and a performance I.Q. of 72, producing a diagnosis of mild mental retardation. (R. 176.) He estimated Plaintiff's academic ability to be at either a second or fourth grade level,[4] and opined that she was borderline illiterate and should avoid working in settings with any arithmetic

---

[4] The evaluation states at one point that "[a]cademic abilities in all areas were quite limited, at the 2nd grade level." (R. 177.) On the next page, however, Dr. Lehman writes that "her academic abilities were quite poor, at the 4th grade level in all assessed areas." (R. 178.)

12

expectations. (R. 177-178.) Dr. Lehman further wrote, however, that Plaintiff "should have no difficulty taking directives from superiors or working in settings that require adherence to reasonable workplace rules or policies," and that "[a]lthough Ms. LaDay's vocational potential is limited, her current objective of working in food service for the local school district seems appropriate." *Id.*

Plaintiff was evaluated in May 2002 by state agency reviewing physician M. Chappquis to determine her functional capacity. (R. 288-305.) While noting Dr. Lehman's diagnosis of mild mental retardation, Dr. Chappquis nevertheless determined that Plaintiff "retains the ability to perform and follow simple instructions and to adequately interact with co-workers and supervisors, and adapt to routine working environments." (R. 290.) The evaluation also indicates that while detailed instructions were difficult for Plaintiff, her ability to remember "locations and work-like procedures" and to understand, remember, and carry out short and simple instructions was not significantly limited. (R. 288.) Dr. Chappquis did not observe marked limitation in any of the categories enumerated under Listing 12.05(D). (R. 302.)

The ALJ discussed both of these evaluations in the administrative opinion. (R. 17-18.) He also noted other record evidence that bears on Plaintiff's mental ability and seemingly undermines Dr. Lehman's conclusions regarding Plaintiff's I.Q. and functional grade level.[5] For example, Plaintiff graduated from high school in regular education classes; Dr. Woodrow Janese, the neurologist who testified at Plaintiff's first benefits hearing, cited this achievement in questioning the accuracy of Dr. Lehman's I.Q. determination. (R. 17.) Plaintiff was also able to gain admission into a certified nurse's program. *Id.* The ALJ observed that at the benefits

---

[5] The Fifth Circuit has affirmed an ALJ's ability to make factual determinations as to the validity of I.Q. tests. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (leaving intact an ALJ's finding that claimant's education, work experience, and demeanor at the benefits hearing called I.Q. test results into question, and holding that "[t]he ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

hearing, "[t]he claimant ably responded to questions and betrayed no evidence of confusion or lack of understanding of the proceeding." (R. 18.)  Further, no evidence had been introduced to demonstrate any early onset of mental retardation, which is an element of the diagnosis under the Social Security regulations.  *See* Listing 12.05 ("Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.").  Finally, the Court observes that Plaintiff herself did not list mental retardation as a disability in applying for benefits, nor did she testify that her mental impairments contributed to her inability to work.[6]  At the hearing, Plaintiff identified only her leg pains and vision problems as disabling conditions.  (R. 639, 641.)

      Plaintiff nevertheless insists that the ALJ should have made a severity finding under Listing 12.05(C), which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Plaintiff points to the ALJ's finding that she has certain severe physical impairments, and reasons that "[i]n the face of this panoply of functionally limiting conditions, Plaintiff's manifestly 'severe' psychological deficits raise her overall impairment to 'Listing' level." Pl.'s Mot. Summ. J. 13.

      In reviewing the ALJ's opinion and the record evidence upon which it is based, however, the Court must conclude that Plaintiff overstates her case.  With regard to the I.Q. requirement of Listing 12.05(C), the Court has already reviewed the evidence cited by the ALJ that tends to undermine the accuracy of Plaintiff's scores.  As to any "physical or other mental impairment imposing an additional and significant work-related limitation of function," the Court is not

---

[6] As noted above, neither Dr. Lehman nor Dr. Chappquis appeared to believe that Plaintiff's mental impairments would prevent her from working.

14

content simply to point, as Plaintiff urges, to the ALJ's finding that her diabetes, gastroesophageal reflux, and diabetic retinopathy were all severe. The ALJ did *not* find that these impairments met or medically equaled in severity any listing in the Social Security regulations, a determination that Plaintiff has not challenged. Further, the ALJ opined that considering the record evidence, Plaintiff's description of her subjective symptoms was not credible, and that if Plaintiff were properly to control her diabetes, she would retain the ability to perform light work.

The Court recognizes the somewhat mixed evidence regarding Plaintiff's mental abilities and medical conditions, and does not doubt that Plaintiff is burdened to a certain extent by mental and physical limitations. Its role in reviewing an ALJ's benefits decision is limited, however, to examining the record for substantial evidence to support an ALJ's determination, and ensuring that applicable legal standards were correctly applied. In the Court's view, there is substantial evidence in the record – more than a scintilla, though perhaps less than a preponderance – to support the ALJ's conclusions that Plaintiff's mental impairments do not significantly limit her ability to perform basic work activities, and that she has no additional physical conditions that impose significant work-related limitations of function. Furthermore, the ALJ applied the correct legal standards. The administrative opinion sufficiently analyzes the range of record evidence; the ALJ's assignment of greater credibility to certain aspects of the record rather than others suggests not that he was "picking and choosing" among the evidence, but rather that he exercised his "discretion to resolve issues of conflicting evidence." *Jones v. Heckler*, 702 F.2d 616, 621 (5th Cir. 1983). The Court concludes that the ALJ did not err in determining that plaintiff's mental impairments were not severe.

### 3. Plaintiff's RFC

Finally, the Court addresses Plaintiff's argument that the ALJ erred at step four, in determining that Plaintiff retained the capacity to perform light work. The Court finds that substantial evidence in the record supports the ALJ's conclusions regarding Plaintiff's RFC, and that he did not commit legal error.

Plaintiff does not challenge the ALJ's observations regarding her mobility and ability to lift, carry, and handle objects (R. 19); the lack of evidence supporting her subjective complaints of pain or hypertension (R. 21); or the non-disabling nature of her vision problems (R. 21). Rather, Plaintiff focuses on the ALJ's view that she had been periodically non-compliant with her diabetes regimen, and that if she were better to control her diabetes, she would be able to perform light work. (R. 21-22.)  Plaintiff argues that the ALJ improperly assumed that she had been willfully noncompliant, and failed to consider the effect of her mental impairments on her ability to adhere to her regimen.

The Court finds substantial evidence in the record to support the ALJ's view that Plaintiff could better control her diabetes through improved adherence to her prescribed medication and diet, even considering her mental impairments. The ALJ accurately cited to treatment notes indicating that Plaintiff had indulged in sugars and alcohol, and that she did not like to follow her diet. (R. 21.) Further, Plaintiff has submitted no evidence suggesting that she is actually unable to understand her prescribed regimen. In fact, the record documents numerous occasions on which Plaintiff received diabetic teaching and was able satisfactorily to demonstrate her understanding back to medical staff. *E.g.*, R. 560 (patient teaching form noting in 2000 that "patient gave good return demonstration");  R. 164 (observing after diabetic teaching consultation in July 2000 that "patient verbalized understanding and had good recall of info

taught"); R. 161 (after Plaintiff admitted in August 2000 to a high-carbohydrate diet, she "[v]erbalized understanding and voiced choices of foods to avoid/limit. States will try."); R. 606 (during an appointment in April 2004, Plaintiff admitted that she didn't like to follow diet but "demonstrate[s] 100% understanding and states will start following diet."); R. 607 (in May 2004, again discussed importance of diet and blood sugar testing and "demonstrate[s] 100% understanding").

It is well settled that failure to adhere to a treatment regimen, when that regimen would allow the claimant to return to work, will result in a finding of non-disability. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (holding that an impairment that can be remedied or treated by medication will not be considered a disability); *see also* 20 C.F.R. § 416.930 (explaining that a patient who does not follow treatment prescribed by a physician will not receive benefits if this treatment would allow the patient to return to work); 20 C.F.R. § 404.1530(b) (stating that if a patient fails to provide a good reason for not following prescribed treatment, that patient will to be deemed disabled and will not receive benefits). Plaintiff has introduced no evidence controverting Dr. Goldstein's testimony that with better adherence to her diabetic regimen, she could work at a light level of activity. There is also no evidence to indicate that Plaintiff is actually unable to understand her prescribed diet and medication. Therefore, the Court finds that the ALJ did not commit error in determining Plaintiff's RFC.

### III. CONCLUSION

The Court finds that the ALJ's determinations in the instant case were supported by substantial evidence, and that the ALJ properly applied the relevant legal standards. Therefore, Plaintiff's motion for summary judgment is hereby **DENIED.**

**IT IS SO ORDERED**.

**SIGNED** this 25th day of June, 2007.

```
                    KEITH P. ELLISON
                    UNITED STATES DISTRICT JUDGE
```

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.